D-12

Q. Did the suspects say anything to you?

A. No.

Q. Did you hear anything while at the scene?

A. Just gunshots, Oh, I could hear P/O Boccalupo yelling.

Q. What was he yelling?

A. Drop the gun get on the ground.

Q. What did you do after you discharged your firearm?

A. I let radio know what happened, and I paused to make sure the gun fire had stopped, slowly I made my way to the rear of the store to make sure the officers were OK. I then ran down Strahle Street towards the direction where the suspects had fled.

Q. What were you thinking prior to discharging your firearm?

A. That the suspect was firing at police officers around the corner, and I did not want him to shoot at me also.

Q. Why did you shoot?

A. I thought the suspect would shoot me, and other officers, and kill us.

Q. Were you injured?

A. No.

Q. Were any civilians injured?

A. Not that I know of.

Q. Are you right handed or left handed?

A. I am right handed.

Q. Is your firearm registered with the Police Department as required by Directive #100?

A. Yes, it is a city issued firearm.

D-12

Q. Officer, as per procedural Directive #10, you are not to disclose any information about this incident to anyone else except personnel from I.A.D., or your attorney. Do you understand?

A. Yes.

Q. You may testify in court do you understand?

A. Yes.

Q. Officer, having had an opportunity to review your statement with is there any anything you wish to add at this time?

A. No.

STATEMENT CONCLUDED: THURSDAY, 9-15-11, AT 11:00 AM.
I HAVE READ THE FOREGOING STATEMENT CONSISTING OF SEVEN (7) PAGES, AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

NAME: _Dimitrios Loizos_        WITNESSES: _____
UNIT: _8th_
DATE & TIME: _9-15-11   11:14 AM_        _____

EXHIBIT
D-13



COP - Shooter

D - 13

I.A.D PS#11-13

STATEMENT OF:    P/O James Boccalupo   AGE: 45    RACE: W  SEX: M
                              BADGE #4826   PR#            APPOINTED: 1-22-96
                              DISTRICT: 8th District           PLATOON:  1-C
                              TELEPHONE: 215-686-3080

DATE AND TIME:    Friday, September 23, 2011, 10:00 AM
PLACE:             Internal Affairs Division
                              7790 Dungan Road, Philadelphia, Pa. 19111.

BROUGHT IN BY:    Self

DATE AND TIME:    Friday, September 23, 2011, 9:50 AM

CONCERNING:    The Discharge of your firearm that occurred on Monday,
                            February 14th 2011, at approximately 8:33 PM in the rear of
                            8525 Frankford Avenue.

IN THE PRESENCE OF:  Lt. John Prendergast #159, I.A.D Shooting Team.

RECORDED BY:    Lt. John Prendergast #159, I.A.D Shooting Team.

Officer, I am Lt. John Prendergast #159, I.A.D.  I will be taking your statement on a word processor.

Officer, we are conducting an official administrative inquiry concerning the performance of your duties as a police officer.  Police Department employment regulations require any police officer that discharges a firearm to account for and make a statement regarding their actions. The District Attorney's Office reviews all firearm discharge incident, and in this case, Christopher Diviny, Chief of the Special Investigations Unit of the Philadelphia District Attorney's Office informed me in a letter, received on 8-2-11 that this investigation is no longer the subject of a criminal investigation by the District Attorney's Office.

Therefore, pursuant to Police Department Directive #10, relating to all discharges of firearms by police personnel, you will now be interviewed by an I.A.D Shooting Team Investigator.

P/o Boccalupo #4826

1

D-13

Pursuant to Philadelphia Police Department Disciplinary Code, You are reminded that failure to cooperate in any Departmental Investigation is punishable by ten (10) days suspension to Dismissal under Article 1-008-10 of the Disciplinary Code. You are also reminded that lying or attempting to deceive regarding a material fact during the course of any Departmental investigation is punishable by Dismissal under Article 1-009-10 of the Disciplinary Code.

Q. Do you understand this?

A. Yes.

Q. Are you willing to cooperate?

A. Yes

Q. Are you represented by counsel?

A. No

Q. What is your full name, rank, badge number, and district or unit of assignment?

A. James Boccalupo, Police Officer, badge# 4826, and I am assigned to the 8th District.

Q. How long have you been a police officer?

A. 15 and half years now.

Q. How long have you been assigned to the 8th District?

A. Since I graduated the Police Academy.

Q. What was your tour of duty and assignment on Monday, February 14, 2011?

A. It was Valentine's Day, and I was working the 2:30 PM to 10:45 PM, and I was assigned to RPC 822, and I was solo.

Q. Were you in uniform or civilian attire?

A. I was in uniform

Q. Were you working with anybody on 2-14-11?

A. No, I was solo.

P/o Boccalupo— # 4826

D-.13..

Q. Will you please go on in your own words and tell me all that you know about this Incident.

A. At approximately 8:30 PM, there was a police radio for a robbery in progress at the CVS store, located at 8525 Frankford Avenue. There was flash information given, which was three white males, all wearing hoodies, and they were armed with guns. Officers Seymour and Schimd, who were both working together, were the first officers to arrive on location. One of the officers came over police radio and stated that the robbery was founded and that the males are still in the store. I was about a block way in the 8700 block of Frankford Avenue. I went over radio and stated that I will be pulling up in a second and will be covering the rear of the building.

I arrived on location and position my car on Strahle facing the rear driveway to the CVS. I observed two doors at the rear of the CVS, and anticipated that the males might be leaving the store from there. I exited my patrol car and took a cover position next to my open driver's door. I then heard several gunshots, from the store, it sounded muffled, then I heard P/O Schimd come over police radio and stated that shots were being fired inside the store.

At this time I thought that the suspect's were firing at the officers inside the store. I started to run towards the front of the store to help the officers, and then I realized that the males were probably going to exit the rear of the store, so I went back toward my patrol vehicle. I then took a few steps into the rear of the driveway to get a better view of the rear door. I then saw two males wearing hoodies come around from the south side of the building towards my direction. We were facing each other and I immediately ordered the males to get down on the ground. Both males ignored my commands and went towards their right and started to climb a chain linked fence that separated the CVS driveway and a common driveway.



I backed up towards Strahle Street and positioned myself to see down both driveways. The first male that climbed the fence landed on the other side of the fence. He was now in a crouch position and from this position he fired several shots in my direction. I immediately returned fire at this male. The male stood up and ran down the common driveway. I could not see the second guy, but I could hear that he was between the bushes and on the fence, because I could hear the chain link fence rattling around. I then saw the male come out from the bushes, the same spot where the first male came out.

He then stood up and I ordered him to get down on the ground. He had something in his hand but I could not tell what it was. While this was going on I heard several gunshots and did not know where they were coming from. I did not want to wait to get shot at again, so I discharged my firearm about two more times. The male then ran down the driveway where the first male ran down. I looked over to my right and saw P/O Snyder standing near my patrol car. At this point myself and P/O Snyder and other officers who arrived went down the common driveway running after the suspects. I started to look into various back yards down the common driveway for the suspects.

*ANDREWS could not have fired. He claims he had B.B. & Dropped it in store. I saw pictures of it.*

P/O Bousley #4824

3

D-13

I then saw an elderly male with his car at the end of the driveway and I asked him if he saw any males running by. The elderly man told yes, and that one of the males pointed a gun at me and tried to take my car. I then asked him what direction the males ran toward and the elderly male pointed south towards the backyards of houses. I just recall what street name. It is either Benson or Blakiston Streets.

Q. What happened next?

A. Numerous officers and supervisors arrived on location, we surveyed the area looking for the suspects. Radio then asked what officers discharged their firearms, we went over with our badge numbers, then met with Sgt. Labrice, who checked our firearms and then transported us here to Internal Affiars.

Q. Was the suspect (s) operating a vehicle?

A. None that we know of.

Q. Can you describe the suspects?

A. When I saw them the best, it was when they were behind the CVS under a dimmed light from the driveway. The first guy was taller than the second guy, From the light I saw quickly that they were both white or light Hispanic, they definitely ere not black males. They both had dark hooded sweat shirts with their hoods up and long dark colored pants.

Q. The first guy, how tall was he?

*The first guy was the shooter* →

A. Over six feet.

Q. Anything about his features you can remember?

A. No, it was way too quick.

Q. At what point did you draw your firearm?

A. When I exited my police car, my weapon was in my hand the whole time.

Q. What were the lighting conditions at the place of occurrence?

A. Poor, dim light from the rear of the CVS, and a little light from the street lights.

Q. What were the weather conditions at the time of occurrence?

A. Cold and clear.

P/o Boccaluro #4826

D-13

Q. How far were you from the suspect when you fired?

A. About twenty to twenty five.

Q. Were any other officers present at the time of the discharge, and what were their actions?



A. My attention was focused in on the suspects. I believe the first time I fired I was by myself and then after I fired at the second male, I remember seeing P/O Snyder to my right. Later on I found out that P/O Loizos was positioned on the other side of the CVS and he discharged also at the suspects. I did not see him at all when the incident was happening.

Q. Were any civilians present, and what were their actions?

A. There was nobody back in the driveways during the shoot out, just the suspect and police.

Q. How many shots did you fire?

A. I found out later at Internal Affairs that I fired ten rounds. I fired multiple times at the first guy and once or twice at the second suspect.

Q. What direction did you fire in?

A. South at suspect #1 and #2.

Q. Did you see the suspect with a gun?

A. The first male fired at me.

Q. Can you describe the suspect's gun?

A. No.

Q. How about the second suspect?

A. I could not see what was in his hand.

Q. Did the suspects say anything to you?

A. No.

P/o Bocculeps #4826

D-13

Q. Did you hear anything while at the scene?

A. Yes, gunshots, muffled from inside the store, and then again outside when the suspects were in the driveways.

Q. What did you do after you discharged your firearm?

A. We went in foot pursuit of both males down the driveway.

Q. Why did you shoot?

A. To protect my life, the first guy fired several shots at me and the second guy had something in his hands, but I could not tell what it was, but I heard additional gunshots and I did not want to get shot.

Q. Were you injured?

A. No.

Q. Were any civilians injured?

A. Not that I know of.

Q. Are you right handed or left handed?

A. Right handed.

Q. Is your firearm registered with the Police Department as required by Directive #100?

A. Yes, it is a city issued firearm.

Q. Officer, as per procedural Directive #10, you are not to disclose any information about this incident to anyone else except personnel from I.A.D., or your attorney. Do you understand?

A. Yes.

Q. You may testify in court do you understand?

A. Yes.

P/o Bocculupo #4824

D - 13

Q.  Officer, having had an opportunity to review your statement is there any anything you wish to add at this time?

A. No.

STATEMENT CONCLUDED: FRIDAY, 9-23-11, AT 11: 10 AM.
I HAVE READ THE FOREGOING STATEMENT CONSISTING OF SEVEN (7) PAGES, AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

NAME: P/o James Boccalupo  4826       WITNESSES:
UNIT:        8TH
DATE & TIME:   9-23-11   11:16AM

7

EXHIBIT
D-14



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

Jason Jones
Direct Dial: (215) 861-215 861 8253
Facsimile: (215) 861- 8618
E-mail Address: Jason.Jones7@usdoj.gov

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

March 15, 2013

David Shapiro, Esq, and Michael Shapiro, Esq.
1429 Walnut Street
Suite 1301
Philadelphia, PA 19102

    RE:  <u>United States v. Joseph Meehan</u>

Dear David and Michael,

    As the Meehan trial is approximately one month away, the government has filed its motion under Federal Rule of Evidence 404(b).  The government will not seek to introduce evidence that Meehan robbed the Rite Aid pharmacy at 9773 Roosevelt Boulevard on January 31, 2011.  However, if the defense attempts to introduce evidence that a third party robbed the Rite Aid pharmacy and/or this unknown third party also robbed the Blue Grass and CVS pharmacies, the government will attempt to rebut such an argument with testimony and evidence that Meehan did rob the Rite Aid pharmacy in January 2011.  Such evidence may include, but not limited to,  Meehan's statements to witnesses bragging that he robbed the Rite Aid and witnesses identified the robber driving a white Mitsubishi Gallant.  The government would also introduce evidence of the DEA 106s and have them matched to some of the drugs found in the Riveria motel.

EXHIBIT
D-15

To: Michael R. Shapiro, Esq.
From: DES
Subject: Chronology of Events
Date: March 11, 2013

Page 11

a. 2/16 Philly PD - Andrews denies participation and knowledge
b. 3/10/11 Multiple Case Affidavit
   i. Offender walked into pharmacy at 9773 Roosevelt Blvd. One offender entered covering his face, armed with a handgun and gloved hands.
   ii. The offender vaulted the pharmacy service counter and instructed complaining witnesses to relinquish controlled substances
   iii. After receiving the controlled substance, vaulted the pharmacy counter and exited and left in a *White Mitsubishi Galant*.[18]
   iv. Offender accessed apparently alone. The offender vehicle was last seen traveling northbound on the Boulevard
   v. Description matches Andrews
   vi. Video 1/31 system was inoperable

c. 8/25/11 302
   i. Andrews says Meehan came to him a few days before 1/31 and asked for gun for purpose of committing robbery. Andrews loaned 9mm semi auto
   ii. Afterwards Meehan gave him Oxy 10 *AND XANAX.*
   iii. Andrews says Meehan told him he robbed Rite Aid and Sabatino acted as getaway driver[19]
   *Ramification of accusation*
   (1) If we can prove Andrews did this and tried to put it on Joe, we can score points. Def accusing Sabatino of being getaway driver.
   (2) If true, invalidates all her testimony.  If not true, damaging to Andrews but may affect Leah.
   (3) If you believe Andrews & think Joe did this, do you have to say Leah was involved since he obv heard **from** Joe

*Handwritten margin notes (left):*
NO OXY WAS taken FROM Rite A. it is NOT listed in D&A Report.

2 reason's for this She Robbed him; & he could latter say she said he did it cause he said she did it.

How the Fuck could Anyone think I Did it? look At Discription!

---

[18]   IMPT - Same car as Bluegrass robbery. Obviously

[19]   IMPT - How do we deal with this - with both Sabatino and with Andrews? Clear onl;y one person was involved.  Where info come from?  How to deal with accusation?

# ATTORNEY CLIENT PRIVILEGED MATERIAL

EXHIBIT
D-16

To: DES
From: MRS
Subject: Meehan - Chronology
Date: 3/15/2013

Page 16

| US v Meehan Robbery of Rite Aid, 9700 Roosevelt Blvd, 1/31/11 List of Controlled Substances Taken Total Value $33,532 | | |
|---|---|---|
| Drug Name | Strength | # |
| | | |

*This are clearly texts to protect their Rat. Fuck them. Andrews did it, he denied all others until proof of them told no proof on R.A. so he held tight.*

**GOVT POSITION - RITE AID** - As the Meehan trial is approximately
one month away, the government has filed its motion under Federal Rule
of Evidence 404(b). The government will not seek to introduce evidence
that Meehan robbed the Rite Aid pharmacy at 9773 Roosevelt Boulevard
on January 31, 2011. However, if the defense attempts to introduce
evidence that a third party robbed the Rite Aid pharmacy and/or this
unknown third party also robbed the Blue Grass and CVS pharmacies, the
government will attempt to rebut such an argument with testimony and
evidence that Meehan did rob the Rite Aid pharmacy in January 2011.
Such evidence may include, but not limited to, Meehan's statements to
witnesses bragging that he robbed the Rite Aid and witnesses identified
the robber driving a white Mitsubishi Gallant. The government would also
introduce evidence of the DEA 106s and have them matched to some of the
drugs found in the Riveria motel.

*WE BRING it IN.*

**February 2011**

19. **Sabatino Related to Robberies - Before or After Blue Grass**

*this never even happened. Torg & Andrews say it was planned three of 13th (I wasn't there).*

a.  Grand Jury Pg 12 - Meehan told her a few weeks before that he was
    going to rob CVS on Frankford Ave.  He asked Sabatino to be the
    getaway driver.  She told him she was scared.  He was planning it
    for Feb 14th.  She says she tried to talk him out of it that day.

b.  **HEARSAY - MUST LOOK UP ADMISSION ADMISSIBILITY -
    DEFINITELY FOR TRUTH OF MATTER**

c.  9/01 302 2 weeks prior to their arrest, Meehan told her he planned
    to rob CVS and wanted to know if she would drive the getaway car.
    She was scared and he opted not to include her.

    i.  Somehow getting more specific as time passes where he
        planned it for the 14th weeks ahead - see if others verify

■

EXHIBIT
D-17



902009

| PROPERTY RECEIPT | FROM WHOM TAKEN Jonathan Andrews | | AGE 38 | SEX w/m | № 2951890 | |
|---|---|---|---|---|---|---|
| ☐ LOST AND FOUND | ADDRESS 2525 Welsh Rd Apt U-2 | | DATE 2-17-11 | TIME 12:30 am | DISTRICT 08 | UNIT 6400 |
| ☐ FOR INVESTIGATION | OWNER (If Known) Same | | LAB USER FEE REQUESTED ☐ YES ☐ NO | | DC NO. 11-08-006226 | |
| ☐ PERSONAL PROPERTY FOR SAFEKEEPING | ADDRESS Same | | | | SEIZURE NO. | |
| ☐ EVIDENCE XXXXXX | DEFENDANT'S NAME Same | | BULK OF PROPERTY STORED AT Evidence Room | | | |

ITEMS OF PROPERTY AND CIRCUMSTANCES UNDER WHICH IT WAS RECEIVED INCLUDING THE EXACT LOCATION TAKEN FROM

The below listed items were recovered inside the above location during execution of Search Warrant # 155407 in reference to a comerical robbery at the CVS located at 8525 Frankford Ave on 02-14-11.

(1) blue sleeveless Nkie shirt.
(1) pair of black PJ Mark sweat pants size XL
(1) Samsung T-Mobile cell phone
(1) Pa Driver license in the name of Jonathan Andrews 3331 Ashville St.
(1) Pair of sunglasses
(1) Tan ripped sleeve from a shirt
(1) pair of black leather gloves
(1) Pair of tan long leather gloves
(1) tan cap with tan fir and long ears
(1) pair of Timberline boots
(1) pair of redwing boots
NEDD#11-1993
Charges: Robbery and related charges
Assigned: det Cawley #9022

| If the person from whom the above amount of money and/or property was taken does not sign below, state reason why: | RECEIVED BY POLICE DEPARTMENT | | |
|---|---|---|---|
| | Arresting or Receiving Officer: *(If personal property for safekeeping, DeskSupervisor is the Receiving Officer)* | | |
| PERSON FROM WHOM TAKEN *(Signature)* | | | |
| WITNESS *(Signature)* det Burkimer | BADGE NO. *(Type)* 638 | SIGNATURE Det Cawley 220282 | BADGE NO. *(Type)* 9022 |

## TRANSFERRED TO EVIDENCE CUSTODIAN/COLLECTOR

I hereby acknowledge receipt of the above listed items.

| *(Date)* | *(Time)* | *(Evidence Custodian/Collection)* |
|---|---|---|

## RELEASE FROM CUSTODY OF POLICE DEPARTMENT

This will acknowledge the receipt from the Police Department of the City of Philadelphia of the amount of money and/or property listed above, and will constitute the release of the City of Philadelphia and its agencies from any and all future responsibility therefor.

| | RECEIVED BY *(Owner or Agent)* | | |
|---|---|---|---|
| ☐ Returned to Owner or Agent | OWNER OR AGENT *(Signature)* | | |
| ☐ Confiscated by Court | | | |
| ☐ Destroyed by Order of Court | | | |
| Petition No. _____ | WITNESS *(Signature)* | BADGE NO. | DATE |
| ☐ Escheat to State | | | |
| Escheat List No. _____ | | | |
| ☐ To Department of Collections | RECEIVED BY *(Other than Owner or Agent)* | | |
| ☐ Other Disposition *(Explain):* | SIGNATURE AND TITLE | | |



D - 17

## AFFIDAVIT OF PROBABLE CAUSE

**Commonwealth of Pennsylvania**
**County of Philadelphia**



Copy

| Police Incident Number (DC#): | Warrant Control Number: |
|---|---|
| 1108006226 | AFF-0001203-2011 |

DET CHRISTOPHER CASEE CHRISTOPH 8170 Northeast Detectives Division

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

1. That after investigation I have probable cause to believe that a warrant of arrest should be issued for:

Defendant Name: <u>JOHNATHAN ANDREWS</u>         Gender: <u>M</u>   Race: <u>White</u>

Alias:

DOB: <u>03/27/1972</u>  Pid: <u>715299</u>

Address: 2525 WELSH RD Philadelphia, PA 19136

CHARGES:

| DC Number | Code | Grade | Description | Count |
|---|---|---|---|---|
| 1108006226 | CC2502 | F1 | Attempt to commit MURDER | 3 |
| | CC2702 | F1 | AGGRAVATED ASSAULT | 3 |
| | CC3701 | F1 | ROBBERY | 2 |
| | CC0903 | F1 | CRIMINAL CONSPIRACY | 5 |
| | CC2702-1 | F1 | ASSAULT OF LAW ENFORCEMENT OFFICER | 3 |
| | CC2702 | F2 | AGGRAVATED ASSAULT | 1 |
| | CC0903 | F2 | CRIMINAL CONSPIRACY | 1 |
| | CC3921 | F3 | THEFT-UNLWF TAKING | 2 |
| | CC3925 | F3 | THEFT-RSP | 2 |
| | CC0907 | M1 | PIC | 8 |
| | CC2706 | M1 | TERRORISTIC THREATS | 7 |
| | CC0903 | M1 | CRIMINAL CONSPIRACY | 2 |
| | CC2701 | M2 | SIMPLE ASSAULT | 5 |
| | CC2705 | M2 | REAP | 8 |
| | CC5104 | M2 | RESISTING ARREST | 3 |

2. That the facts tending to establish the grounds for the issuance of the warrant of arrest and the probable cause for my belief are as follows:        ( Note: if extended text exists, see following page(s) )

---

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF AND THAT PROBABLE CAUSE TO ARREST EXISTS.

Affiant:  DET CHRISTOPHER CASEE CHRISTOPH 8170 Northeast Detectives Division

Sworn to or affirmed and subscribed before me this 18 day of February , 2011

_____         _____
Affiant Signature                          Issuing Authority Signature

D-17

**Commonwealth of Pennsylvania**
**County of Philadelphia**



**AFFIDAVIT OF PROBABLE CAUSE**
Copy

Police Incident Number (DC#):
1108006226

Warrant Control Number:
AFF-0001203-2011

DET CHRISTOPHER CASEE CHRISTOPH 8170 Northeast Detectives Division

1108006226   THIS AFFIDAVIT WAS REVIEWED AND PRE-APPROVED BY ADA JOHN MORGAN ON 2-18-2011

THE ARE SEVERAL COUNTS FOR EACH OFFENSE FOR THIS OFFENDER AS RECOMMENDED BY ADA MORGAN.....THEY ARE AS FOLLOW; (3) COUNTS OF ATTEMPTED MURDER, (8) COUNTS OF SIMPLE ASSAULT, (8) COUNTS OF R.E.A.P., (4) COUNTS OF AGGRAVATED ASSAULT, (8) COUNTS OF TERRORISTIC THREATS, (3) COUNTS OF ASSAULT ON LAW ENFORCEMENT, AND MULTIPLE COUNTS OF CONSPIRACY.

The complaining witnesses are employed by CVS Pharmacies (8525 Frankford Avenue, Philadelphia, PA 19136,215-331-9762) as customer service representatives.
On 02-14-11, the complaining witnesses were working the 2:00PM-1 0:00PM tour of duty. At approximately 8:32PM, the complaining witnesses were positioned inside the commercial establishment, behind the (employees only) customer service counters. The complaining witnesses observed three (3) unknown males - the offenders - access the premises via the structure's front entrance/exit. All three (3) offenders utilized items of clothing in an attempt to partially obscure their faces; their hands were also "gloved." The offenders were armed with handguns.

Upon entering the store, Offender #1 (JOSEPH MEEHAN) advanced toward the pharmacy counter situated at the rear of the structure and jumped onto the pharmacy counter. This offender (MEEHAN) then pointed a black semi-automatic handgun at complainant #1 and complainant #2 (Employees of the store). Offender #1 (MEEHAN) instructed the complaining witnesses to relinquish an assortment of controlled substances (i.e., Clonazepam, Oxycodone, Xanax, Etc.,), and place them into plastic [CVS] bags; the complaining witnesses complied.
Offender #2 (JOHNATHAN ANDREWS) advanced toward the non-pharmacy counter situated at the front of the structure. This offender (ANDREWS) was armed with a brown handled gun and came behind the pharmacy counter. Offender #2 instructed the complaining witnesses to relinquish U.S. currency, and place the money into plastic [CVS] bags; the complaining witnesses complied.
This Offender #3 (RANDY PARSONS) positioned himself inside the vestibule, also situated at the front of the structure. This offender stayed at the front of the store at the doors and ordered the comp and additional customer/witnesses to the ground. This offender/PARSON had a hood over his head along with a mask over his face and gloves on his hands. The offenders were preparing to exit the premises when they, apparently, observed the responding officers. The offenders instinctively retreated to the rear of the structure.

On the evening of 02-14-11, at approximately 8:33PM, patrol bureau personnel responded to a radio call, "8525 Frankford Avenue, Robbery In Progress." At approximately 8:34PM, two (2) uniformed police officers, P/O Schmid #3610 and PIO Seymour #3672 operating marked vehicles - arrived on location. The officers entered the building and were met by comp #3 and several other witnesses who stated the store was being robbed. The officers helped the witnesses exit the building and continued to the pharmacy area of the store. While in the aisle, the officers heard commotion from the pharmacy area and PIO Schmid observed a male (Later I'd as Offender ANDREWS) with a brown and black gun in his hand. The offender (ANDREWS) pointed this weapon at PIO Schmid who then took cover as comp #1 was standing behind the offender in the pharmacy area. The offenders fled toward the rear of the store and the officers then heard numerous gunshots.

The offenders positioned themselves immediately in front of the premises' drive-thru window' and attempted to flee out the window. The offender/offenders raised their handguns, aimed them at the drive-thru window, and discharged their weapons; as a result, the window shattered.

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF AND THAT PROBABLE CAUSE TO ARREST EXISTS.

Affiant:  DET CHRISTOPHER CASEE CHRISTOPH 8170 Northeast Detectives Division

Sworn to or affirmed and subscribed before me this 18 day of February , 2011

Affiant Signature

Issuing Authority Signature





D-17

**AFFIDAVIT OF PROBABLE CAUSE**
Copy

Commonwealth of Pennsylvania
County of Philadelphia



| Police Incident Number (DC#):<br>1108006226 | Warrant Control Number:<br>AFF-0001203-2011 |
|---|---|

DET CHRISTOPHER CASEE CHRISTOPH 8170 Northeast Detectives Division

The offenders then exited the premises via the drive-thru window, and attempted to flee the area on foot. The offenders soon made contact with additional police officers, outside, at the rear of the property. And at this time several gunshots were exchanged between the offender/s and uniform Police Officers. None of the officers was struck by hostile gunfire; it is unknown, at this time, whether any - or all- of the offenders was struck by police gunfire. The offenders fled, on foot, into the neighborhood.

Witness: was interviewed inside NEDD on 2-14-11 at approx. 9:57 PM., and stated in summary; he/she was driving his/her vehicle in the rear driveway of 4400 Strahle Street at approx. 8:35 PM. He/she heard 3-4 loud "pops" and thought it was firecrackers. He/she turned and observed a W/M with a tan scarf around his face and a hat or hoodie over his head. This male ran up to the driver's side door of the vehicle and pointed a black handgun at the compo and stated, "Get out of the car, get out of the car." This complainant confronted the offender who then jumped over a fence on the other side of the driveway and fled on foot towards Benson Street. The complainant did not see where this offender ran after he jumped the fence.
The witness's description of the male and clothing worn is consistent with Offender/MEEHAN and the clothing is consistent with the clothing worn by MEEHAN during the robbery (captured on Video). The area where this offender fled is consistent with where the C.S told Det. Casee that Offender/MEEHAN ran and hid in the bushes until being picked up by another vehicle several hours after the Robbery.

The scene was processed by Crime Scene Unit and recovered was numerous shell casings from inside and outside the CVS Pharmacy which were fired from the offender/offenders and Phila. Police. Also recovered from inside the store was (1) black and brown in color BB gun which was dropped by Offender/ANDREWS as he fled the store on foot.
On the evening of 02-14-11, at approximately 9: 15 PM, P/O Joseph F. Netterville #5208 (Payroll #167064, Narcotics Bureau) was contacted by a confidential source via cellular telephone. The confidential source informed the officer that ▮ knew the identities of the three (3) offenders; they are, as follows:

□#1 □Joseph B. Meehan 40/W/M (DOB: 11-18-70, SSN: ▮▮▮▮  PID: 0707017, SID: 20302798, FBI: 455053NA9),
65 Old Spring Road, Coatesville, P A 19320, 484-786-8877
□#2 □Jonathan M. Andrews 38/W/M (DOB: 03-27-72, SSN: ▮▮▮, PID: 715299, SID: 20208937, FBI: 181662NA9),
3331 Ashville Street, Philadelphia, PA 19136, 215-332-1300
□#3 □Randall K. Parsons 42/W/M (DOB: 01-28-69, SSN: ▮▮▮▮  PID: 0635634, SID: 16138240, FBI: 409866DA2),
913 Magee Avenue, Philadelphia, PA 19111, 215- 725-8060

On the morning of 02-15-11, at approximately 11 :OO AM, a representative of the WPVI (Channel 6) "tip line" contacted the Northeast Detective Division. The representative informed investigators that an unknown person had called and - also - identified the offenders as Meehan, Andrews and Parsons. [Officer Netterville's confidential source adamantly denies contacting any members of the news media.]

Detectives viewed the surveillance footage captured by the pharmacy's interior cameras. Offender #1 's physical appearance is consistent with that of Joseph B. Meehan 40/W/M. Offender #2's physical appearance is consistent with that of Jonathan M. Andrews 38/W/M. Offender #3's physical appearance is consistent with that of Randall K. Parsons 42/W/M. The offender's physical appearances are also consistent with physical descriptions provided by the complaining witnesses and witnesses

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF AND THAT PROBABLE CAUSE TO ARREST EXISTS.

Affiant: DET CHRISTOPHER CASEE CHRISTOPH 8170 Northeast Detectives Division

Sworn to or affirmed and subscribed before me this 18 day of February , 2011



_____
Affiant Signature

_____
Issuing Authority Signature

JOHNATHAN ANDREWS

Page 3 of 5 Pages

Printed: 02/24/2011 04:45 PM

D-17

**AFFIDAVIT OF PROBABLE CAUSE**
Copy

**Commonwealth of Pennsylvania**
**County of Philadelphia**



Police Incident Number (DC#):
1108006226

Warrant Control Number:
AFF-0001203-2011

DET CHRISTOPHER CASEE CHRISTOPH 8170 Northeast Detectives Division

On the evening of 02-14-11, at approximately 9:45PM, a witness was formally interviewed by a detective inside 2831 Levick Street. The resident stated, as follows: On the evening of 02-14-11, at approximately 8:35PM, he observed a maroon/red-colored Sport Utility Vehicle (SUV) parked on 4000 block of Benson Street. The car was "idling" on the highway. Suddenly, a white-colored sedan skidded to a halt immediately in front of the SUV. The rear door on the passenger side of the sedan opened. The operator of the SUV exited his vehicle, approached the sedan, and threw "something" inside the sedan. The sedan then sped away from the scene at a high rate of speed. The operator of the SUV returned to his vehicle and he, too, sped away from the scene at a high rate of speed.

Officer Netterville's confidential source also stated that Offender #2 operates a maroon/red-colored SUV. The Commonwealth of Pennsylvania, Bureau of Motor Vehicles, identified Offender #2 as the registrant of a 2005 Jeep Grand Cherokee Limited. Officer Netterville's confidential source additionally stated that Offender #3 operates a white-colored sedan. The Commonwealth of Pennsylvania, Bureau of Motor Vehicles, identified Offender #3's mother as the registrant of a 1999 Pontiac Bonneville SE. Offender #3 resides with his mother. [As of 9:30PM on 02-15-11, the white-colored sedan is parked at or near 913 Magee Avenue.]

On 2-16-11, Det. Casee and Det. Harrigan made contact with a Confidential Source (who can be made available for future court proceedings) who stated that Offender/MEEHAN fled the scene on foot and stayed in the 4000 block of Benson Street until he was picked up several hours later and driven from the area. Information was received that Offender/MEEHAN buried the black semi-automatic handgun in the bushes/ground in a yard in the rear of 4000 Benson Street or Blackiston Street.
Det's Casee and Harrigan received further information from this Confidential Source that Offender/ANDREWS was involved in the robbery at CVS. On 2-16-11 they obtained information that the Offender/ ANDREWS lived in the apartments near Welsh and Roosevelt Blvd. This C.S. agreed to go to this area and show the Det's where this offender lives. While entering 2525 Welsh Road, Det. Casee observed a red in color, Jeep (SUV) bearing a Pa Tag# GJX-3877. This C.S stated that this was the vehicle owned by the Offender/ANDREWS. NCIC/PCIC check revealed the owner of the vehicle is the Offender/ANDREWS. This vehicle is described as being used in the robbery at CVS Pharmacy on 2-14-11, (DC# 11-8-6226). Det. Casee and Det. Harrigan conducted a survellance of the vehicle and approx. an hour later, Offender/ANDREWS got into the vehicle and drove from the parking lot. Police radio was notified of the offender's travel and he was stopped for investigation approx. 1 mile away in the 3100 block of Willits Road. The Offender/ANDREWS was stopped by uniform officers (P/O Rogers #2567 and Ragland #4976) along with Det. Casee and Det. Harrigan and other uniform officers. Offender/ANDREWS was subsequently arrested under DC# 11-156467 for Narcotics violations and had $1741 USC in his possession.

Based upon this arrest, several Search Warrants were served by Det. Cawley #9022 and Det. Burkhimer #638 on Offender/ANDREWS residence and Jeep. The results of these Warrants provided numerous articles of clothing worn by the Offender/Offenders at the time of this Robbery. Also recovered from the Jeep was a bag containing numerous brass BB's for BB type gun and numerous Xanax, Oxycodone and Valium tablets (which were found in a hidden compartment). On 2-17-11 at approx. 3:10 PM., while inside NEDD, the Offender/ANDREWS who was currently under arrest for DC# 11-08-6467 was advised of his rights and the charges against him. The offender admitted to his role in this Robbery and Shooting at CVS Pharmacy and stated the role of Offender #1 (MEEHAN) and Offender #3 (PARSONS). The offender also was shown clothing that was recovered and positively identified the clothing that was worn by him during the course of the Robbery and the clothing worn by Offender #1 (MEEHAN) at the time of the Robbery.

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF AND THAT PROBABLE CAUSE TO ARREST EXISTS.

Affiant: DET CHRISTOPHER CASEE CHRISTOPH 8170 Northeast Detectives Division

Sworn to or affirmed and subscribed before me this 18 day of February , 2011

Affiant Signature                    Issuing Authority Signature

JOHNATHAN ANDREWS                    Page 4 of 5 Pages                    Printed: 02/24/2011 04:45 PM

D-17



**AFFIDAVIT OF PROBABLE CAUSE**

**Commonwealth of Pennsylvania**
**County of Philadelphia**



Copy

Police Incident Number (DC#):
1108006226

Warrant Control Number:
AFF-0001203-2011

DET CHRISTOPHER CASEE CHRISTOPH 8170 Northeast Detectives Division

Det. Casee and Det. Harrigan spoke with a representative from CVS Pharmacy and he/she stated that on the night of the Robbery, the offender's took approximately $86,815.00 worth of various Narcotics along with $5000.00 in USC. These items were all placed in the bags that the offender's attempted to exit the store with, but dropped all bags and fled the store.

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF AND THAT PROBABLE CAUSE TO ARREST EXISTS.

Affiant:  DET CHRISTOPHER CASEE CHRISTOPH 8170 Northeast Detectives Division

Sworn to or affirmed and subscribed before me this 18 day of February , 2011

_____
Affiant Signature

_____
Issuing Authority Signature

JOHNATHAN ANDREWS

Page 5 of 5 Pages

Printed: 02/24/2011 04:45 PM

D-17

D 27

## CIRCUMSTANCES

On the evening of 02-16-11, at approximately 7:23PM, detective bureau personnel made contact with Jonathan M. Andrews 38/W/M – on the highway, at or near 3100 Willits Road. Jonathan M. Andrews 38/W/M, found to be in possession of ["crack"] cocaine and $1,741.00 in U.S. currency, was subsequently taken into custody by patrol bureau personnel; and transported to 2831 Levick Street for processing.

On the morning of 02-17-11, at approximately 12:30AM, detective bureau personnel lawfully executed Search Warrant #155411 on the private residence maintained by Jonathan M. Andrews 38/W/M at 2525 Welsh Road. Investigators recovered several items of evidentiary value; they are as follows: One (1) box of 9mm ammunition [containing twenty (20) live rounds], two (2) dark-colored coats/jackets, several pairs of gloves, and several pairs of footwear. Moreover, detectives recovered the flesh-colored nose/mouth/chin covering [fashioned from an undergarment] worn by Jonathan M. Andrews 38/W/M's conspirator.

On the afternoon of 02-17-11, at approximately 4:00PM, detective bureau personnel lawfully executed Search Warrant #155408 on Jonathan M. Andrews 38/W/M's Sport Utility Vehicle (SUV) – YEAR: 2005, MAKE: Jeep, MODEL: Cherokee, COLOR: Maroon/Red, PLATE: GJX3877, TITLE: 62288935, VIN: 1J4HR58285C730704. Investigators recovered several items of evidentiary value; they are as follows: One (1) digital scale and an assortment of pills whose appearance and markings were consistent with those stolen from the Rite Aid Pharmacy on 01-31-11 and those stolen from the Bluegrass Pharmacy on 02-09-11. It should be noted that the assortment of pills was recovered from an [after market] "hidden" compartment situated within the vehicle's dashboard.

On the afternoon of 02-17-11, at approximately 1:00PM, Jonathan M. Andrews 38/W/M was escorted by detective bureau personnel to an interview/investigation room. The offender was then briefed by investigators on the status of their active investigation relevant to a series of [armed] robberies of pharmacies within the confines of the 8th Police District.

Jonathan M. Andrews 38/W/M was advised of his constitutional rights – "mirandized" – and elected to submit to a formal interview by detectives. The offender admitted to conspiring with others to rob – at gunpoint – the CVS Pharmacy, located at 8525 Frankford Avenue, on the evening of 02-14-11 at approximately 8:32PM.

Jonathan M. Andrews 38/W/M was subsequently charged with one (1) count of robbery and related offenses.

* * * * * * * * * * * *

On the morning of 02-16-11, at approximately 6:00AM, detective bureau personnel lawfully executed Search Warrant #155405 on the private residence maintained by

Joseph B. Meehan 40/W/M at 4922 Longshore Avenue.  Investigators recovered several items of evidentiary value; they are as follows:  an assortment of pills whose appearance and markings were consistent with those stolen from the Bluegrass Pharmacy on 02-09-11.

On the afternoon of 02-17-11, at approximately 12:00PM, law enforcement personnel made contact with Joseph B. Meehan 40/W/M – on the highway, at or near 2120 Route 73, Pennsauken, NJ.  Joseph B. Meehan 40/W/M, an absconder, was taken into custody for parole/probation violation(s).

Law enforcement personnel determined that Joseph B. Meehan 40/W/M had leased/rented Room 74 of the Riviera Motor Inn, 2120 Route 73, Pennsauken, NJ 08110.  After due deliberation and consideration, a decision was made to secure the room – for the purpose of lawfully executing a "signed and sealed" search warrant.  Members of the City of Philadelphia Police Department and the Township of Pennsuaken Police Department jointly drafted an affidavit of probable cause for a search warrant.  On the afternoon of 02-17-11, at approximately 5:00PM, a [State of New Jersey, County of Camden] Municipal Court Judge endorsed a Search and Seizure Warrant for Room 74 of the Riviera Motor Inn, 2120 Route 73, Pennsauken, NJ 08110.  Said warrant was subsequently executed.

Recovered from Room 74 of the Riviera Motor Inn were thousands of pills whose appearance and markings were consistent with those stolen from the Bluegrass Pharmacy on 02-09-11 and $612.00 in U.S. currency.  Moreover, investigators recovered a hand-written "pill inventory" and a hand-written "tally sheet."

\* \* \* \* \* \* \* \* \* \* \* \*

Based upon the totality of the facts and circumstances presented herein, the affiant firmly believes that there exists sufficient probable cause to charge Joseph B. Meehan 40/W/M with two (2) counts of robbery and related offenses.

Based upon the totality of the facts and circumstances presented herein, the affiant firmly believes that there exists sufficient probable cause to charge Jonathan M. Andrews 38/W/M with two (2) additional counts of robbery and related offenses.

EXHIBIT

D-18